STATE OF CONNECTICUT *v.* WILLIAM S. WATLINGTON
(13775)

SHEA, CALLAHAN, COVELLO, HULL and BORDEN, Js.

Argued June 7—decision released August 7, 1990

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom, on the brief, was *John Connelly,* state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, following a jury trial, of murder in violation of General Statutes § 53a-54a, and assault in the first degree in violation of General Statutes § 53a-59 (a) (1). The defendant claims that: (1) the prosecutor's comments during final argument were an appeal to the jurors' passions and sympathies that denied him his state and federal constitutional rights to due process; (2) the trial court improperly instructed the jury that the trial was a "search for the truth"; and (3) the trial court improperly instructed the jury on an element of the affirmative defense of extreme emotional disturbance. We affirm.

The jury could reasonably have found the following facts. The defendant, William Watlington, resided in Waterbury with his wife, Nadine Beamon Watlington, and their three children. The defendant and his wife had a history of drug abuse and marital problems. Several months prior to the incident in question, the defendant voluntarily admitted himself into an inpatient drug program at the Institute of Living in Hartford. After he completed the program and returned home, he continued to attend outpatient treatment sessions six days a week and maintained a drug free life. The defendant encouraged and assisted his wife in

attending several outpatient treatment sessions, including Alcoholics and Narcotics Anonymous.

The defendant's brother-in-law, Tommy Beamon, moved into the defendant's house in late February, 1988, because of his own marital problems. After Beamon moved in, the defendant's wife stopped attending outpatient treatment sessions and began drinking and using crack cocaine. The family began to disintegrate and the defendant blamed Beamon for the family's problems. On April 15, 1988, the defendant told Beamon to leave the house. He helped Beamon pack his clothes and drove him to his parents' house.

The following night, the defendant went to a gospel concert at the University of Bridgeport and later went out to dinner with friends. When the defendant arrived home, Beamon was lying on the living room floor. He asked Beamon what he was doing there and told Beamon he did not want him in his house again. According to the defendant, Beamon stated that the defendant's wife gave him permission to stay there. The defendant went upstairs to his wife's bedroom to ask her why she let Beamon into their house. After receiving no response from his wife, he went back downstairs and again ordered Beamon out of his house. When Beamon refused to leave, the defendant left his house and drove to his brother's house where he stored his .38 snubnose revolver. After obtaining his revolver, the defendant drove back to his house and again ordered Beamon to leave, but he refused. The defendant then shot Beamon in the buttocks. Upon hearing the shot, the defendant's wife came downstairs. She told the defendant that "if you are going to shoot my brother, you are going to have to shoot me also." The defendant shot his wife in the right side. He then shot Beamon a second time in the left side of the upper back.

Beamon died as a result of the bullet to the upper back, which punctured his left lung and his heart. The defendant's wife recovered from her wound.

The defendant testified at trial and admitted to firing the fatal shot at Beamon and injuring his wife. He claimed, however, that he had done so under the influence of extreme emotional disturbance. In support of this defense, the defendant presented twelve lay witnesses.

# I

The defendant first claims that the prosecutor's remarks during closing argument were so egregious that they deprived him of his constitutional right to due process under the constitution of Connecticut, article first, § 8, and the fourteenth amendment to the United States constitution.[1] The defendant asserts that the prosecutor on three separate occasions appealed to the jurors' passions and sympathies during his closing argument. Specifically, the defendant claims that the prosecutor improperly stated to the jurors not to "forget" Beamon and the "victims."[2] The defendant failed to

---

[1] The constitution of Connecticut, article first, § 8, provides in part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. . . . "

The fourteenth amendment to the United States constitution, § 1, provides in part: "No State shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Because the defendant has not presented a separate analysis under the state constitution, we consider his claims under the federal constitution only.

[2] On three separate occasions during the prosecutor's closing argument, the prosecutor referred to the victims:

(1) At the beginning of the opening portion of the state's closing argument: "But, again, on behalf of the State's Attorney's Office, I would like to thank you for your time and your patience. And, I know that Mr. Beamon and his family would like to thank you and Mrs. Watlington."

(2) At the end of the opening portion of the state's closing argument: "And, in this case, although you have seen Mr. Watlington here for the

preserve this claim at trial, however, and now seeks review under the "exceptional circumstance" provision in *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

In *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), we reformulated the standard announced in *State* v. *Evans,* supra, for appellate consideration of constitutional claims that were not preserved at trial. We stated that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* supra. We noted that we would remain free to dispose of the claim "by focusing on whichever condition is most relevant in the particular circumstances." Id., 240. In this case, we conclude that the defendant's claim is insufficient to satisfy the second condition in *Golding.*

last couple of days and he may look like a nice fellow, may seem like a nice fellow, don't forget the victims. . . . Let's not forget the victims in this case, you know. We haven't seen Mr. Beamon. The only time you are going to get to Mr.—see Mr. Beamon is his back. Mr. Beamon only could talk to you through his wounds. Mr. Beamon is dead. We could kick Mr. Beamon's name around here and say he was on narcotics and is a drunk and everything else. Man can't defend himself because he is dead. . . . Let's not forget about Mrs. Watlington. Let's not forget about Mr. Beamon. Thank you."

(3) At the end of the state's final closing argument: "You know, and don't—when you go into that jury deliberation room, don't forget Tommy Beamon. I mean, you know, Tommy Beamon, he had a life too. He had kids. He had a family. He served his country. He was only thirty years old. I mean, is he not entitled to live because he wanted to sleep an extra night at his sister's house? Thank you."

It is true that a "prosecutor may not appeal to the emotions, passions and prejudices of the jurors" because such appeals " ' "have the effect of diverting the jury's attention from their duty to decide the case on the evidence." ' *State* v. *Couture,* [194 Conn. 530, 562, 482 A.2d 300 (1984)]." *State* v. *Williams,* 204 Conn. 523, 545, 529 A.2d 653 (1987). It is also improper for a prosecutor to inject extraneous issues into the case by encouraging the jury to identify with the victim. Id., 547. Nonetheless, we have held that *"Evans* review of such a claim is unavailable when the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial"; *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990); because in such a case the claimed misconduct is insufficient to infect "the fundamental fairness of the trial itself." Id. The defendant bears the burden of "demonstrating that his claim is indeed a violation of a fundamental constitutional right"; *State* v. *Golding,* supra, 240; rather than a common law or statutory claim wearing a constitutional mask. *State* v. *Somerville,* supra. Although we disapprove of the prosecutor's references in his closing argument to the victims and their families, we conclude, under the circumstances of this case, that these remarks did not rise to the level of egregious misconduct implicating the denial of the defendant's state and federal constitutional rights to due process. *State* v. *Northrop,* 213 Conn. 405, 421, 568 A.2d 439 (1990); *State* v. *Rodgers,* 207 Conn. 646, 654, 542 A.2d 1136 (1988); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672–74, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986). Accordingly, we dismiss this claim of the defendant. *State* v. *Somerville,* supra.

## II

The defendant next claims that the trial court improperly instructed the jury that the trial is a "search for

the truth" rather than an evaluation of whether the evidence was sufficient to prove guilt beyond a reasonable doubt. The defendant maintains that the court's instructions negated the presumption of innocence and diluted the burden of proof, thereby leaving the jury without any standard to decide the case, in violation of his state and federal constitutional rights to due process of law. See footnote 1, supra. Although the defendant did not properly preserve this claim at trial, he now seeks review under *State* v. *Evans,* supra, and the plain error rule of Practice Book § 4185.[3] We conclude that this claim is not of constitutional magnitude, but simply masquerades as such, and we therefore dismiss it under *State* v. *Golding,* supra, 241.[4] We also conclude that the instruction did not involve plain error.

The defendant challenges the following instruction of the trial court: "Now, in every trial there should be

---

[3] Practice Book § 4185 provides: "ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

[4] The defendant claims that this court has reviewed similar claims under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), in *State* v. *Brown,* 199 Conn. 14, 28, 505 A.2d 690 (1986), *State* v. *Findlay,* 198 Conn. 328, 345, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 72 (1986), and *State* v. *Moss,* 189 Conn. 364, 365–66, 456 A.2d 274 (1983). Those cases, however, do not help the defendant. The alleged erroneous jury instructions in *Brown, Findlay* and *Moss* involved instructions on reasonable doubt quite different from the instructions at issue in this case, and, in any event, we rejected the constitutional challenge to the instructions at issue there. See also *State* v. *Thomas,* 214 Conn. 118, 570 A.2d 1123 (1990).

a search for the truth. And, the duty of the members of the jury in a criminal case is to search the evidence for the truth. Having found it to your satisfaction, then report it and your findings to the court by means of a proper verdict under the law, as I am instructing you."

It is well established that individual jury instructions will not be judged in isolation from the entire charge; rather, the charge must be read as a whole. *State* v. *Thomas,* 214 Conn. 118, 570 A.2d 1123 (1990); *State* v. *Smith,* 210 Conn. 132, 554 A.2d 713 (1989). Furthermore, isolated passages from a jury instruction must be read in the context in which they were given and with regard to how the jury was likely to have understood them. *State* v. *Foreshaw,* 214 Conn. 540, 548, 572 A.2d 1006 (1990).

In the present case, the challenged instruction was given as part of the court's instructions to the jury on its role in gauging the credibility of witnesses. Near the end of the court's instruction regarding credibility, immediately after its instruction on how to evaluate expert opinion testimony, the court gave the instruction that the defendant now challenges. That instruction was immediately followed, however, by the following instruction: "When you go into the jury room, analyze the testimony that you have heard from the witness chair and decide what credibility you are to give to those witnesses. You are not expected to abandon your common sense while sitting in the jury room, the jury box or in the courtroom. *Your function is to decide where the truth lies, obviously.* I use the word testimony, I am also using a concept of considering all of the exhibits that have been presented to you. It will be a matter for you to determine and decide how much weight and what credibility you are to give to the witnesses and the exhibits in this case." (Emphasis added.)

Furthermore, prior to and numerous times after this instruction, the court properly charged the jury on the presumption of innocence and the state's burden of proving the defendant guilty beyond a reasonable doubt. Nothing in those instructions suggested any linkage between, on one hand, the presumption of innocence and the state's burden to prove the defendant's guilt beyond a reasonable doubt, and, on the other hand, the court's instruction that, in determining the credibility of witnesses, the jury should search for the truth. The court did not repeat the challenged instruction, and the defendant does not contest any other part of the court's instruction. In fact, at the end of the court's charge, the defendant's counsel stated: "I have no objection. I thought it was an excellent charge."

It is clear that there is no basis for the defendant's claim that this instruction, although perhaps worded too broadly, negated the presumption of innocence and diluted the state's burden of proof. Reading the instruction in its context and viewing the jury charge in its entirety, we cannot conceive that the jury heard that instruction as a statement by the court that the jury should exercise its factfinding function unburdened by the presumption of innocence or by the necessity that it be persuaded of the defendant's guilt beyond a reasonable doubt.[5]

For much the same reason, the defendant's claim is unreviewable as plain error under Practice Book § 4185. Plain error review " ' " 'is reserved for truly

[5] The defendant relies on *State* v. *Giroux,* 151 Vt. 361, 561 A.2d 403 (1989). We conclude that *Giroux* is inapposite. In that case, the trial court, in its instructions to the jury, defined reasonable doubt as meaning that the jury must be "convinced the charge is true." Id., 363. The court held that the trial court's instructions "did not effectively tell the jury that the search for truth involved a search for truth beyond a reasonable doubt." Id., 365. In the present case, unlike *Giroux,* the challenged instruction was not given as part of the instructions on the burden of proof, nor was it linked to that instruction in any way.

extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " ' " *State* v. *Thomas,* supra, 120. In this case, after a careful review of the record, we cannot say that the trial court's instruction affected the fundamental fairness of the trial or resulted in any manifest injustice to the defendant.

## III

The defendant next claims that the trial court improperly instructed the jury on the affirmative defense of extreme emotional disturbance. The defendant's claim is based on the following instruction: "Now, the second element, the defendant was exposed to an extremely unusual and overwhelming state, that is more than mere annoyance or unhappiness. And, the next element, the defendant had an extreme emotional reaction to *that state,* as a result of which, there was a loss of self-control and his reason was overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation, other similar emotions." (Emphasis added.) The court, at the request of the jury and after deliberations began, repeated the same instruction on the affirmative defense to the jury.

The defendant maintains that the court's use of the words "that state" in its instructions on the "third element"[6] of the defense was an inaccurate statement of the law. According to the defendant, the court's use of the words "that state" referred to the circumstances in which the defendant found himself rather than to the defendant's mental state. The defendant argues

---

[6] Although we have recently held in *State* v. *Forrest,* 216 Conn. 139, 578 A.2d 1066 (1990), that the three guidelines this court established in *State* v. *Elliott,* 177 Conn. 1, 411 A.2d 3 (1979), are not "elements" of the affirmative defense of extreme emotional disturbance, we refer to them as such for consistency purposes only, since the trial court used similar language in its charge, and the defendant has adopted that phraseology in his brief.

that the court should have used "it," which would have properly referred to the defendant's mental state, as the defendant had provided in his request to charge[7] and as stated in *State* v. *Elliott,* 177 Conn. 1, 9–10, 411 A.2d 3 (1979). Therefore, according to the defendant, the trial court's improper instruction violated his due process right to establish a defense.[8] We do not agree.

It is well established that when a proper request is filed pursuant to Practice Book § 852 and the trial court has failed to charge the jury in the exact language of the request, the test is whether the court's instructions properly covered the substance of the written request. *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986). "A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given." *State* v. *Casey,* 201 Conn. 174, 178, 513 A.2d 1183 (1986). "The trial court is not

---

[7] The defendant requested the court to charge the jury as follows: "In determining whether . . . Mr. Watlington has proven the affirmative defense of an extreme emotional disturbance by a fair preponderance of the evidence as a mitigation of murder to manslaughter you must find that . . . Mr. Watlington was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness, and he had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions. Consideration is given to whether the intensity of these feelings was such that his usual intellectual controls failed and the normal rational thinking for that individual no longer prevailed at the time of the act."

[8] Although the defendant had properly preserved this claim for appeal pursuant to Practice Book § 852, he sought review of this claim under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and the plain error rule in Practice Book § 4185. Our recent decision in *State* v. *Foreshaw,* 214 Conn. 540, 544, 572 A.2d 1006 (1990), disposes of the defendant's claim under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), *State* v. *Evans,* supra, and the plain error rule. In *Foreshaw,* we held that an unpreserved challenge to an alleged erroneous instruction on an element of the affirmative defense of extreme emotional disturbance was not reviewable under *Golding* and the plain error rule, because such claims of error do not raise a constitutional question and do not constitute a manifest injustice to the defendant so as to impair the effectiveness or integrity of his trial.

under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues." *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978); *State* v. *Harrell,* supra.

The defendant's request to charge on the affirmative defense of extreme emotional disturbance provided in part: "In determining whether [the defendant] has proven the affirmative defense . . . you must find that the [defendant] was exposed to an extremely unusual and overwhelming *state,* that is, not mere annoyance or unhappiness, and he had an extreme emotional reaction to *it* . . . ." (Emphasis added.) The word "it" in the request to charge is used as a pronoun to substitute for and to represent the word "state" in the "second element" of the defense. Similarly, the use of "that state" in the trial court's instructions on the "third element" of the affirmative defense was used as a referent to the type of "state" mentioned in the second element.

The word "that" preceding "state," in the court's instructions, is used as an adjective. As an adjective it refers to "the thing, or idea, pointed to, mentioned, or understood from the situation." Webster's Third New International Dictionary. The only type of "state" mentioned or that the jury could reasonably understand from the court's instructions was the type of "state" in the "second element" of the defense. Because the substitution of "that state" refers to the type of "state" mentioned in the "second element" of the defense, and

thus, had the same effect as would the use of "it," the court's instructions did not, contrary to the defendant's claim, convey or infer to the jury a different type of "state." Therefore, whether the court's substitution of "that state" refers to the defendant's mental state or to the circumstances the defendant found himself in depends on the meaning of the word "state" in the "second element" of the affirmative defense. Because the defendant does not challenge the court's instructions on the "second element" of the affirmative defense, nor any other part of the court's instructions on the affirmative defense, we need not decide whether the word "state" in that context refers to the defendant's mental state or the circumstances in which he found himself.

We conclude that the trial court's instructions on the affirmative defense covered the substance of the defendant's request and adequately apprised the jury of the law to guide them to a just determination. Therefore, the court's substitution of "that state" for "it" did not prejudice the defendant or mislead the jury so as to constitute a violation of the defendant's state and federal constitutional rights to present a defense.

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.