## State of Connecticut *v.* Robert Wiedl
## (11360)

Dupont, C. J., and Foti and Freedman, Js.

Argued May 3—decision released June 22, 1994

*Robert G. Golger,* with whom, on the brief, was *Howard T. Owens, Jr.,* for the appellant (defendant).

*Pamela S. Meotti,* deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Cornelius Kelly,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of threatening in violation of General Statutes § 53a-62 (a) (1), burglary in the second degree in violation of General Statutes § 53a-102 (a), and criminal trespass in the first degree in violation of General Statutes § 53a-107 (a). He was sentenced to a total effective sentence of eight years imprisonment, suspended after four years, with five years of probation.[1] On appeal, the defendant claims that the trial court improperly (1) admitted evidence of his prior misconduct, and (2) submitted the charge of criminal trespass in the first degree to the jury because insufficient evidence was presented to sustain that conviction. He also claims that prosecutorial misconduct during closing argument deprived him of his right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim lived in an apartment attached to a thirty-four room house in Fairfield, and worked for the owners in exchange for free lodging. Only one road led to the main house and the entrance to that road had a gate house that was attended at all times. The names of all invited guests were supplied to the guards for purposes of admission.

The victim also worked as a waitress at a different location. On September 10, 1991, she arrived at her

---

[1] As a result of these convictions, the defendant was convicted of two counts of violation of probation. Upon the defendant's request to consolidate the judgments, the trial court also sentenced the defendant on the two violation of probation convictions resulting in an effective sentence of two years consecutive to the underlying sentence.

apartment at approximately 1 a.m. after waitressing. As she was leaving her apartment to take out the garbage, she heard a noise in the garage attached to her apartment. She entered the garage and discovered the defendant, with whom she had previously had a relationship, dressed in black clothing with black grease or paint on his face. He was crouched in a hiding position beside a car, and when she asked what he was doing there, he grabbed her wrists. She broke away from him and ran up the stairs and into her apartment. She tried to close the door on the defendant, but he forced his way through the door and inside. The victim pushed a security alarm button but it failed to operate. The defendant came at her and she struck him with a wood carving, which splintered from the impact. He picked up a jagged piece of wood and threatened to kill her. She feared for her safety and told the defendant to leave. She called 911 and told the dispatcher that there was a man in her house threatening to kill her. The defendant left before the police arrived.

## I

The defendant first claims that the trial court improperly admitted evidence of his prior misconduct.

During the state's case-in-chief, the prosecuting attorney sought to introduce evidence, through the testimony of the victim, that in May, 1990, she awakened during the night to find the defendant in her bedroom, dressed entirely in black. At that time, the defendant ran immediately upon being observed. The state argued that this evidence was being offered to show a common scheme or to establish a continuing system of criminal activity. The defendant pointed out that identity was not an issue; he admitted that he was on the victim's premises on September 10, 1991, but claimed that he was there with her permission. He objected to the admission of this prior act evidence because it was

highly prejudicial and did not tend to establish a type of signature offense. The trial court permitted the victim to testify as to that prior misconduct because it tended to demonstrate a common scheme of criminal activity.

"Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. *State* v. *Mooney,* 218 Conn. 85, 126, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Sierra,* 213 Conn. 422, 428, 568 A.2d 448 (1990). Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime." *State* v. *Graham,* 33 Conn. App. 432, 438, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

Uncharged misconduct evidence must satisfy a two part test in order to be admitted as an exception. The evidence must be relevant and material to at least one of the claimed exceptions, and its probative value must outweigh its prejudicial effect. *State* v. *Cooper,* 227 Conn. 417, 425, 630 A.2d 1043 (1993). The admission of such evidence is a decision within the discretion of the trial court; id., 426; we will reverse such a decision only when it is manifest that the trial court has abused its discretion or an injustice has occurred. *State* v. *Santiago,* 224 Conn. 325, 338–39, 618 A.2d 32 (1992). We will draw every reasonable presumption in favor of the trial court's ruling. *State* v. *Cooper,* supra, 427.

As the defendant points out, identity was not an issue in this case. It was unnecessary, therefore, to demonstrate that the defendant's acts were distinctive or similar to a signature. See *State* v. *Mooney,* supra, 218

Conn. 131–32. Evidence of prior misconduct, however, may also be used to show a common scheme. "Generally, the determination of whether the uncharged misconduct evidence is relevant as proof of a common scheme or system of criminal activity depends on a number of factors. Those factors include: (1) the degree of *general* similarity between the uncharged and charged misconduct; (2) the frequency of the uncharged misconduct; and (3) the remoteness or closeness in time between the uncharged and charged misconduct." (Emphasis in original.) *State* v. *Murrell,* 7 Conn. App. 75, 87–88, 507 A.2d 1033 (1986).

The similarities between the two incidents were rather remarkable. In both instances, the defendant appeared at an unusual hour, in a secured area, dressed entirely in black, and attempted concealment or attempted to evade detection. These distinctive combinations of facts constitute more than the required "general" similarities. The trial court did not improperly admit such evidence as relevant to show a common scheme or system of criminal activity. The trial court could have reasonably found that the evidence had significant probative value on this issue, "especially where the similarities of the crimes are so striking, a circumstance that makes the evidence that much more probative." *State* v. *Reddick,* 33 Conn. App. 311, 328, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

We conclude that the trial court acted properly and did not abuse its discretion in determining that the evidence was relevant and material and that the probative value of the testimony outweighed any potential prejudicial effect on the jury.

## II

The defendant next claims that the state presented insufficient evidence to establish the crime of crimi-

nal trespass in the first degree, General Statutes § 53a-107 (a).[2]

"The two part test for evaluating the sufficiency of the evidence in a jury trial is well established. First, the reviewing court construes the evidence presented at trial in a light most favorable to sustaining the verdict. *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993); *State* v. *Gray,* 221 Conn. 713, 719–20, 607 A.2d 391, cert. denied,      U.S.      , 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Allen,* 216 Conn. 367, 380, 579 A.2d 1066 (1990). The reviewing court then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from them, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Baldwin,* supra [368]; *State* v. *Gray,* supra, 720; *State* v. *Allen,* supra [380]. In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct. *State* v. *Baldwin,* supra [368]; *State* v. *Gray,* supra [720]; *State* v. *Allen,* supra, 380–81." *State* v. *Wager,* 32 Conn. App. 417, 429–30, 629 A.2d 1146, cert. denied, 228 Conn. 912, 635 A.2d 231 (1993).

The evidence was sufficient under either subdivision (1) or (2) of § 53a-107 (a) to have allowed the court properly to submit this charge to the jury. There was evidence presented that a court order was in existence on September 10, 1991, prohibiting the defendant from

[2] General Statutes § 53a-107 (a) provides: "A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, he enters or remains in a building or any other premises after an order to leave or not to enter [is] personally communicated to him by the owners of the premises or other authorized person; or (2) he enters or remains in a building or any other premises in violation of a restraining order issued pursuant to section 46b-15 or a protective order issued pursuant to section 46b-38c by the superior court."

contacting the victim. Furthermore, the victim ran from the defendant, attempted to stop him from entering her apartment, ordered him to leave, struck the defendant and eventually called 911.

It is not our function, but is rather the function of the jury, to determine the credibility of the victim as a witness. *State* v. *Baldwin,* supra, 224 Conn. 367. It is also the function of the jury to find facts and draw reasonable inferences from those facts. *State* v. *Stanley,* 223 Conn. 674, 681, 613 A.2d 788 (1992). There was sufficient evidence presented to allow the jury to conclude that the defendant knew that he was not licensed or privileged to enter or remain in the victim's apartment and that he entered or remained therein after the victim ordered him out, or that he entered or remained in violation of a court order.

## III

The defendant also claims that the prosecutor's closing remarks were improper and denied him his right to a fair trial.[3] The defendant asserts that the prosecutor acted improperly in appealing to the jurors' emotions, passions and prejudices. The defendant neither objected to the remarks nor requested a curative

---

[3] During his closing arguments, the prosecutor stated: "I don't know if many of you have been in any type of a stormy relationship, but try to put yourself in her shoes and find out exactly how you would feel, given some of the things that you heard in this courtroom over the past week."

He also stated: "I pose a question to a witness; they give you the response. I'm stuck with whatever they say. I'm stuck with their appearance. I'm stuck with their past criminal history. Mother Theresa did not come into the courtroom and sit on the witness stand. Hopefully, Mother Theresa would not get herself involved in something like this. However, you have a woman up here—I don't think a woman should have to go through what she went through. . . .

"I'm stuck with [the victim]. Obviously, I would want a better witness, in some respects, maybe to answer the question directly, maybe to answer the question in a way I think would be the best to be put before you. But I can't direct or I can't control what comes out of her mouth; I'm stuck with that. But I believe everything that she [has] said is the truth."

instruction.[4] Our careful review of the record in this case reveals that the prosecutor's comments during argument, while improper, did not reveal a pattern of conduct and were not so blatantly egregious as to deprive the defendant of a fundamental constitutional right and a fair trial as required by the *Evans-Golding* doctrine. We will not review this unpreserved claim of prosecutorial misconduct. *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The defendant seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).