## STATE OF CONNECTICUT *v.* TYSHON MOORE
### (AC 16219)

Foti, Landau and Healey, Js.

Argued January 28—officially released June 9, 1998

14

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Earl B. Richards*, assistant state's attorney, for the appellee (state).

*Opinion*

HEALEY, J. The defendant, Tyshon Moore, appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a).[1] We affirm that judgment and the judgments of violation of probation.

---

[1] General Statutes § 21a-277 (a) provides in relevant part: "Any person who . . . possesses with the intent to sell or dispense . . . any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance . . . for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

The defendant was tried on a three count substitute information. The first count charged him with the crime of possession of narcotics in violation of General Statutes § 21a-279 (a); the second count charged him with the crime of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b); and the third count charged him with the crime of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a). The jury had been instructed that it could not find him guilty of both the second and third counts. At the time of sentencing, after merging the two crimes of which he was convicted at the trial, the trial court sentenced the defendant to a term of twelve years for the conviction of possession of a narcotic substance with intent to sell. The sentence was to run concurrent with terms of two and one-half years and three years for his probation violations for a total effective term of twelve years imprisonment.

On appeal, the defendant claims that his right to a fair trial was prejudiced because (1) the trial court abused its discretion when it permitted the state to cross-examine the defendant's mother concerning prior arrests of the defendant, and (2) the state's remarks in closing arguments were improper.

The jury reasonably could have found the following facts. On May 4, 1994, at approximately 8 p.m., two officers, Peter Carusone and Andrew Muro, assigned to the drug interdiction unit of the New Haven police department, drove their marked police cruiser to the corner of Shelton Avenue and Ivy Street in New Haven. That intersection is known as a high narcotics sales area. As their vehicle came to a stop at the intersection, they both observed what they believed to be a hand-to-hand narcotics transaction between an unknown male and an unknown female on the sidewalk approximately ten to fifteen feet away. The male, later identified as the defendant, was holding a plastic sandwich bag in his right hand and reaching into the bag with his left hand, while the female was standing next to him with money in her hand. The plastic bag contained a number of smaller packages of white powder. Before an actual exchange took place, the defendant turned, saw the police and ran away.

As the defendant crossed the street and ran, both Carusone and Muro observed the defendant stuff the plastic bag up the sleeve of his jacket. Carusone pursued the defendant on foot while Muro followed in the police cruiser. Approximately two blocks away, the defendant was cornered inside a fenced parking lot and Carusone arrested him.

Carusone searched the defendant and found, in the left sleeve of his jacket, a plastic bag containing twenty-four small glassine bags of white powder that subsequently tested positive for the presence of cocaine.[2]

[2] Edward Kendall, a New Haven police officer for seventeen years with expertise in the area of narcotic trafficking, testified that possession of a

Carusone also found $15 in the pocket of the defendant's pants.

At the trial, the defense adduced evidence not only concerning the circumstances of the defendant's arrest but also of whether he was drug-dependent at that time. The defendant called his mother, Donna Bennett, as a witness and also testified in his own behalf. This appeal followed the verdict of guilty.

## I

We first address the issue directed to the state's cross-examination of Bennett. To put this claim in the proper context, additional facts must be set out. On direct examination, defense counsel asked Bennett the following:

"Q. Did [the defendant] ever speak to you about being involved with drugs?

"A. Yes.

"Q. Did you draw any conclusions from your discussions with him?

"A. Yes, I did.

"Q. What did you arrive at?

"A. That he—he had a serious drug problem and that he needed help.

"Q. For this period that you lived at Brewster Street, did the—did the drug problem occur in intervals?

"A. Yes.

"Q. Could you describe how that happened?

"A. *Well, [the defendant] had been arrested several times, for what I believe to be as the result of him*

---

large number of bags of cocaine, such as twenty bags, would be more consistent with possession with intent to sell rather than possession for personal use.

*using drugs, and—and, then, just getting wild and just doing things that he had no business or being places he had no business.* And—but, when he would go, like to jail, and, then, he would come back home, all the time he was in jail, he was like, well, I haven't done any drugs, and I'm not going to do any, I want to go to school, I want to do this and that. And when he came home, for a while, it would, you know, be good, and we'd look into different things that he could possibly do. He could work with my husband, who's self-employed, some days, and, then, you know, then we could see the pattern starting all over again. Like, you know, he would supposed to be working with my husband, and not show up, or he'd come and not have any energy, he'd be tired, things of that nature." (Emphasis added.)

During the cross-examination of Bennett, the state inquired as follows:

"Q. And was he—when did his problem start, his—his problems with the law and things of that nature?

"A. Maybe about fifteen or sixteen.

"Q. Fifteen or sixteen. And you said he had been arrested on other things before?

"A. That's correct.

"Q. And how many times was that?

"A. I don't know.

"Q. And you don't remember what?

"A. Various things.

"Q. Such as?"

At that point, the defendant objected and the jury was excused. In asking the court to bar this line of questioning, the defendant argued that permitting it would be unduly prejudicial. In response, the state

argued that the defendant had "opened the door" on Bennett's direct examination and that it ought to be permitted to proceed with this line of questioning. The trial court agreed with the state saying, "I do believe the door's been open to it." In doing so, the trial court also indicated, "The jury has already heard through this witness' voluntary testimony, that the defendant has been arrested several times, as a result of using drugs, so that these arrests, in fact, have been linked to the alleged claim of drug dependence. . . . Therefore, the issue of drug dependence has been raised in connection with his behavior. . . . It's the essential issue with respect to the charges in the second count of the information in this case, whether or not he was drug-dependent at the time of this offense." In ruling that the state could cross-examine Bennett with respect to the subject of her direct examination, the trial court said that it would caution the jury then and later that the testimony elicited from Bennett was to be used for impeachment purposes only and was not evidence of the defendant's bad character and was not to be used as evidence in assessing his guilt or innocence. Upon the jury's return to the courtroom, the trial court instructed them to that effect.[3] The state continued its cross-examination and Bennett admitted that she believed that the defendant had been arrested "for . . . possession or something . . . [but she was] not really sure of all the charges." When asked further about crimes for which the defendant was arrested she said, "Possession, [that's] all I

---

[3] "I'm going to allow [the assistant state's attorney] to question Mrs. Bennett with respect to the subject of her direct examination. I think it is clearly relevant to the issue of whether or not the defendant was drug-dependent at the time of the offense in this instance, and whether or not he was a user or seller. I will, however, caution the jury, both, before [the assistant state's attorney] starts this line of inquiry and in—after the inquiry is concluded, and in my closing instructions, that any testimony that's about to be elicited is being elicited for purposes of cross-examining this witness only, that is, for impeachment purposes. It is not evidence of the defendant's bad character, nor, may the jury use this evidence in assessing guilt or nonguilt of the charges involved."

know." When asked if that was possession of narcotics, she replied, "That . . . that's the only possession—I assume that's what it was." She also acknowledged that since the defendant had become an adult,[4] there were one or two periods of about one month each during which she had not seen the defendant because he was either in jail or with friends. When the state completed its cross-examination of Bennett, the trial court again instructed the jury as it had earlier.[5] At the time of its final instructions to the jury, the court for the third time, gave similar instructions.[6]

In claiming that the trial court abused its discretion, the defendant argues that the prejudicial impact of Bennett's testimony outweighed its probative value and caused "irreparable damage" to his credibility, particularly because he did testify and, in doing so, contradicted the testimony of the arresting officers. He further argues that, not only did the trial court inappropriately allow evidence of other acts of misconduct but, in doing

---

[4] The defendant was twenty-one years old at the time of his trial.

[5] At that time the following instructions were given: "Again, ladies and gentlemen, I want to caution you that the testimony you just heard, with respect to periods of time where the defendant may have been incarcerated and with respect to prior arrests, is not to be considered, by you, in any way, with respect to whether or not the defendant is guilty or not guilty of the crimes with which he is charged. It is not evidence of bad character, it's not—it should not be held against the defendant, in any way. And should only be considered by you for the very limited purpose of the cross-examination of this witness, when you are asked to assess the credibility of this witness."

[6] At that time the following instructions were given: "You will recall that during cross-examination of Donna Bennett, the state questioned her about the defendant's prior arrests and periods of incarceration. This evidence was offered and admitted for one purpose only, to be weighed by you in testing Donna Bennett's credibility. You may not use this evidence, in any way, as evidence that the defendant is guilty of the crimes charged in this case. You may not infer that the defendant is likely to have committed the offenses charged in this case, because he was arrested or jailed in the past. You may consider this evidence only as it bears on Donna Bennett's credibility. The weight that you give this evidence, in this regard, is for you to decide."

so, it did not consider whether the "relevance" of such testimony outweighed its prejudicial impact. Included in this claim is the defendant's argument that the trial court, in allowing Bennett's testimony, permitted the state to explore the particular crimes for which he had been arrested with no consideration of the prejudicial impact of that evidence. The defendant claims that the trial court's ruling in admitting the testimony amounts to an abuse of discretion.[7] Finally, he claims that, as a result, the only evidence as to his criminal history and the nature of the crimes for which he had been arrested came solely from the cross-examination of Bennett. We are not persuaded by any of these claims.

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject." *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986); see also *State* v. *Roy*, 173 Conn. 35, 50, 376 A.2d 391 (1977). "The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party." *State* v. *Graham*, supra, 13. "The doctrine of opening the door cannot, of course, be subverted into a rule for injection of prejudice. *United States* v. *Lum*, [466 F. Sup. 328, 335 (D. Del. 1979)], quoting *United States* v. *Winston*, [447 F.2d 1236, 1240 (D.C. Cir. 1971)]. *State* v. *Glenn*, [194 Conn. 483, 499, 481 A.2d 741 (1984)]. The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. *California Ins. Co.* v. *Allen*, 235 F.2d 178, 180 (5th Cir. 1956). *United States* v. *Winston*, supra [1240]. Thus, in making its determination, the trial court should balance the harm to the state in restricting the

---

[7] The defendant points out that when the state cross-examined him, it did not elicit any evidence of any prior felony convictions.

inquiry with the prejudice suffered by the defendant in allowing the rebuttal. Id., 1241–42; *People* v. *Arends*, 155 Cal. App. 2d 496, 509, 318 P.2d 532 (1957)." (Internal quotation marks omitted.) *State* v. *Graham*, supra, 13–14; *State* v. *Hernandez*, 224 Conn. 196, 206–207, 618 A.2d 494 (1992).

The doctrine of "opening the door" may be "expressively understood" according to the Circuit Court of Appeals for the District of Columbia: " 'This business about "opening the door" is a much overused issue and it carries with it an oversimplification. Opening the door is one thing. But what comes through the door is another. Everything cannot come through the door.' " *United States* v. *Winston*, supra, 447 F.2d 1240. "Evidence of a defendant's prior misconduct is not ordinarily admissible to prove his bad character or criminal tendencies." *State* v. *Williams*, 203 Conn. 159, 185, 523 A.2d 1284 (1987); see *State* v. *Ortiz*, 40 Conn. App. 374, 378, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1444 (1996). "Evidence of other misconduct, however, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . or an element of the crime." (Citations omitted; internal quotation marks omitted.) *State* v. *O'Neill*, 200 Conn. 268, 273, 511 A.2d 321 (1986); *State* v. *Sierra*, 213 Conn. 422, 428–29, 568 A.2d 448 (1990); *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982); *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Busque*, 31 Conn. App. 120, 128, 623 A.2d 532 (1993), appeal dismissed, 229 Conn. 839, 643 A.2d 1281 (1994). Such evidence, however, to be admissible must also be relevant and material. *State* v. *Asherman*, 193 Conn. 695, 728, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Smith*, 198 Conn. 147, 157, 502 A.2d 874 (1985); *State* v. *Ibraimov*, supra, 352;

*State* v. *Wiedl*, 35 Conn. App. 262, 265, 644 A.2d 1313, cert. denied, 231 Conn. 914, 648 A.2d 160 (1994).

The trial court has broad discretion not only to rule on the relevancy of evidence; *State* v. *Jones*, 205 Conn. 638, 666–67, 534 A.2d 1199 (1987); but also to determine the scope of cross-examination. *State* v. *Cooper*, 227 Conn. 417, 431, 630 A.2d 1043 (1993); *State* v. *Hernandez*, supra, 224 Conn. 208; *State* v. *Sharpe*, 195 Conn. 651, 657, 491 A.2d 345 (1985). "Uncharged misconduct evidence must satisfy a two part test in order to be admitted as an exception. The evidence must be relevant and material to at least one of the claimed exceptions, and its probative value must outweigh its prejudicial effect. *State* v. *Cooper*, [supra, 427]." *State* v. *Wiedl*, supra, 35 Conn. App. 265. " 'Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done.' " *State* v. *Braman*, 191 Conn. 670, 676, 469 A.2d 760 (1983); see *State* v. *Cooper*, supra, 427; *State* v. *Payne*, 219 Conn. 93, 98, 591 A.2d 1246 (1991); *State* v. *Crosby*, 196 Conn. 185, 191, 491 A.2d 1092 (1985).

In applying the foregoing principles to the facts of this case, we conclude that the trial court did not abuse its discretion. In this case, the trial court carefully balanced the probative value of the proffered evidence against its prejudicial impact on the defendant before admitting it.[8] Before admitting that evidence, the trial court asked the state to indicate "by way of [an] offer

---

[8] The defendant seems to suggest in his brief that the trial court, in making its ruling, did not specifically refer to the matter of prejudice. Even where this is so, the lack of a specific reference is hardly ground to assume that the trial court disregarded it. See *State* v. *Cascone*, 10 Conn. App. 163, 164, 521 A.2d 1067, cert. denied, 203 Conn. 808, 525 A.2d 522 (1987). As we point out, the conduct of the trial court clearly demonstrates that it did consider prejudice.

of proof how far you plan to take this." The state did so. The trial court opined that Bennett's testimony of the defendant's activity with drugs had raised the issue of his drug dependence, which it said was "the essential issue, with respect to the charges in the second count[9] of the information in this case, whether or not he was drug-dependent at the time of this offense."[10] The elicited evidence was clearly relevant and material. As previously stated, the trial court repeatedly and carefully instructed the jury on how this evidence was to be used.

It has often been held that proper limiting instructions serve to mitigate the prejudicial impact of prior misconduct evidence. *State* v. *Cooper*, supra, 227 Conn. 428;

---

[9] When the trial court was called on to rule on this matter, the jury had already heard from Bennett concerning, inter alia, how she had come to believe from observing the defendant, who sporadically lived at home with her, that "he had a serious drug problem and that he needed help," that the defendant "had been arrested several times, for what [she believed] to be as the result of him using drugs, and—and, then, just getting wild and just doing things that he had no business doing or being places he had no business" and that "when he would go, like to jail . . . when he came home, for a while, [he] would . . . be good . . . then we could see the pattern starting all over again."

[10] This court has discussed the difference between General Statutes §§ 21a-278 and 21a-278 (b) (latter statute was subject of second count of information at this defendant's trial). "The statutes are virtually identical except that § 21a-278 applies exclusively to persons who are not drug-dependent. The design and effect of § 21a-278 (b) is to punish persons who are not drug-dependent and sell narcotics more severely than drug-dependent persons who sell narcotics. The legislature accomplishes that goal by providing for a five year mandatory minimum sentence for those convicted under § 21a-278 (b). A drug-dependent person can escape liability under § 21a-278 (b), and thus the five year mandatory minimum sentence, by proving that he was drug-dependent at the time of the offense. *State* v. *Januszewski*, 182 Conn. 142, 167, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981) (clear meaning of clause relating to absence of drug dependency to exempt particular class of persons from operation of statute). A drug-dependent person, could, however, be convicted under § 21a-277 (a), which does not consider drug dependency, but which also does not carry a mandatory minimum sentence. *State* v. *Paredes*, 35 Conn. App. 360, 372, 646 A.2d 234, cert. denied, 231 Conn. 925, 648 A.2d 166 (1994)." *State* v. *Jenkins*, 41 Conn. App. 604, 607, 679 A.2d 3 (1996).

*State* v. *Baldwin*, 224 Conn. 347, 357–58, 618 A.2d 513 (1993); *State* v. *Brown*, 199 Conn. 47, 58, 505 A.2d 1225 (1986); *State* v. *Ryan*, 182 Conn. 335, 338 n.5, 438 A.2d 107 (1980); *State* v. *Huckabee*, 41 Conn. App. 565, 573, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996); *State* v. *Ulen*, 31 Conn. App. 20, 35–36, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). The trial court's ruling, including its limiting instructions to the jury, was well within its discretion.

Even though the defendant also claims that the trial court's rulings irreparably damaged his credibility, that is clearly not so on the record before us. We also recognize that he claims that, because of the court's ruling, the evidence that came in from his mother's testimony as a result, constituted "the only evidence as to [his] criminal history and the nature of the crimes for which he had been arrested."[11] We reject both of these claims. In making them, the defendant overlooks some very damaging testimony he himself gave. The defendant testified that he started using marijuana at age fifteen and that he began using other drugs at age sixteen. Although he started off experimenting, his drug use became heavier. He used heroin and then cocaine. He testified that he used drugs "up to last Sunday, or the last time he was in court." The defendant said that he used twenty to forty bags of cocaine a day. The defendant also said that he financed his drug use only by committing "robberies, stealing. The drug dealers, the youngest drug dealers [are] the easiest ones, you get them for like $500, maybe $1000. You, you, stick—stickups, like, stickups." The defendant also testified that "when that run out, we could just rob them again. But, I had got shot like that, during robberies, a couple of years back" as well as saying that that had not stopped him "cause I—I was high when I got shot, so,

---

[11] In making this argument, the defendant points out that the state did not elicit evidence of any prior conviction of him upon its cross-examinations.

I really didn't feel it, I didn't really feel it. But, one of the dealers we had robbed, we robbed a young one, but, he remembered our faces, and he told some of the other—the other guys he with, and, no, they came back to us. And I got shot twice, that was in 1991." The defendant also testified that he committed "street robberies, too, whenever I could get some, like quick money" and had robbed dealers "all over Connecticut." The defendant was, he said, afraid to spend too long on the street "unless I had a gun on me." The defendant even ventured that on the day he was arrested for the offenses for which he was now on trial that he had "probably robbed somebody."

Our Supreme Court has, on a number of occasions, quoted with approval *State* v. *Staples*, 120 N.H. 278, 283, 415 A.2d 320 (1980), when that court stated, "When a witness voluntarily testifies, as did the defendant here, he asks the jury to believe him. The jury should be informed about the sort of person asking them to take his word." See *State* v. *Hernandez*, supra, 224 Conn. 207; *State* v. *Sierra*, supra, 213 Conn. 434; *State* v. *Williamson*, 206 Conn. 685, 699, 539 A.2d 561 (1988); *State* v. *Glenn*, supra, 194 Conn. 498–99. Given the defendant's own testimony, it ill befits him to say that the trial court's ruling allowing the state to examine his mother's direct testimony on cross-examination irreparably damaged his credibility. In addition, his argument that the evidence that was admitted due to this ruling constituted "the only evidence as to his criminal history and the nature of the crimes for which he had been arrested" is totally without merit. We note that Scott Grove, a psychiatrist who was the defendant's expert witness, testified that it was "absolutely" true that drug-dependent persons will rob, steal and sell drugs to support their drug habits. The trial court said that the door had been opened, but it was very cautious in what it allowed to come through the door, and what did come

through did so under appropriate instructions given on three separate occasions. There was no abuse of discretion as claimed.

## II

The defendant next claims that the prosecutor's remarks in closing arguments were improper and that it was reasonably probable that they prejudiced his right to a fair trial. Although the defendant concedes that he failed to preserve this claim at trial, he nonetheless argues that the claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[12] because the remarks prejudiced his right to a fair trial.

The defendant claims that the prosecutor asked the jury to view this case as a "swearing contest" between the defendant and the state's "two key witnesses," who were police officers, that the prosecutor repeatedly vouched for the truthfulness of the three police officers who testified, that he "continually voiced his own opinion of the evidence," that he called the defendant a "thief" and a "robber" and that he appealed to the emotions of the jury. In examining the defendant's claim under *Golding*, we are aware that he has a constitutional due process right to a fair trial. We will review the claim

---

[12] "In *State* v. *Golding*, [supra, 213 Conn. 239–40], we reformulated the standard announced in *State* v. *Evans*, [165 Conn. 61, 327 A.2d 576 (1973)] for appellate consideration of constitutional claims that were not preserved at trial. We stated that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error, (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . *State* v. *Golding*, supra [239–40]. We noted that we would remain free to dispose of the claim by focusing on whichever condition is most relevant in the particular circumstances. Id., 240. *State* v. *Watlington*, 216 Conn. 188, 192, 579 A.2d 490 (1990)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 768 n.26, 670 A.2d 276 (1996).

under *Golding*, but we do not agree that the defendant was deprived of a fair trial.

Our Supreme Court has acknowledged that prosecutorial misconduct can occur in the course of closing argument. See *State* v. *Atkinson*, 235 Conn. 748, 670 A.2d 276 (1996); *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). "In order to deprive a defendant of his constitutional right to a fair trial, however, the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Atkinson*, supra, 769; *State* v. *Williams*, supra, 204 Conn. 539–40; *State* v. *Santiago*, 45 Conn. App. 297, 302–303, 696 A.2d 344, cert. denied, 241 Conn. 927, 697 A.2d 362 (1997); *State* v. *Garrett*, 42 Conn. App. 507, 516, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 397, 398 (1996). At trial, the defendant did not object to the prosecutor's remarks or request a curative instruction, and therefore, "he presumably did not regard [the] remarks as seriously prejudicial at the time they were made." *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993); see *State* v. *Cassidy*, 236 Conn. 112, 131, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996); *State* v. *Negron*, 221 Conn. 315, 330, 603 A.2d 1138 (1992); *State* v. *Falcone*, 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983). Under *Golding*, "[t]he defendant bears the burden of 'demonstrating that his claim is indeed a violation of a fundamental constitutional right' . . . ." (Citation omitted.) *State* v. *Watlington*, 216 Conn. 188, 193, 579 A.2d 490 (1990).

"[I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Robinson*, supra, 227 Conn. 746; *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994); *State* v. *Richardson*, 214 Conn. 752, 760, 574 A.2d 182 (1990); *State* v. *Haggood*, 36 Conn. App. 753, 772, 653 A.2d 216, cert. denied, 233 Conn. 904, 657 A.2d 644 (1995). Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence. *United States* v. *Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991); *United States* v. *Laurins*, 857 F.2d 529, 539 (9th Cir. 1988), cert. denied, 492 U.S. 906, 109 S. Ct. 3215, 106 L. Ed. 2d 565 (1989). *Molina* goes on to state: "In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue that one of the two sides is lying." *United States* v. *Molina*, supra, 1445; see also *Commonwealth* v. *Murchison*, 418 Mass. 58, 60, 634 N.E.2d 561 (1994); *State* v. *Aquilar*, 117 N.M. 501, 873 P.2d 247 (1994). "While the prosecutor is permitted to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom, he is not permitted to vouch personally for the truth or veracity of the state's witnesses." *State* v. *Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989). We keep in mind that "[t]he purpose of summations is for the attorneys to assist the jury in analyzing, evaluating and applying *the evidence. United States* v. *Morris*, 568 F.2d 396, 401 (5th Cir. 1978)." (Emphasis in original.) *United States* v. *Pelullo*, 964 F.2d 193, 219 (3d Cir. 1992). "[A] 'prosecutor may not appeal to the emotions, passions and prejudices of the jurors.' " *State* v. *Watlington*, supra, 216 Conn. 193; *United States* v. *Modica*, 663 F.2d

1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982); *State* v. *Williams*, supra, 204 Conn. 545; *State* v. *Couture*, 194 Conn. 530, 564, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). Such appeals " 'have the effect of diverting the jury's attention from their duty to decide the case on the evidence.' " *State* v. *Couture*, supra, 562. The prosecutor must also confine himself to the evidence in the record. *State* v. *Binet*, 192 Conn. 618, 631, 473 A.2d 1200 (1984). "[W]e must review the comments complained of in the context of the entire trial." *State* v. *Robinson*, supra, 746; *State* v. *Morales*, 45 Conn. App. 116, 132, 694 A.2d 1356 (1997), appeal dismissed, 246 Conn. 249, 714 A.2d 677 (1998); *State* v. *Villanueva*, 44 Conn. App. 457, 462, 689 A.2d 1141, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997).

The defendant asserts that the state framed the issue in this case as a "swearing contest" between himself and the police. The term "swearing contest" was never used. During his argument, defense counsel himself alluded to the state's attempt to discredit *all* of his witnesses, including the defendant, and to consider their testimony with that of the police officers. He thereupon asked the jury to consider whether "it [looked] like these [witnesses] made these things up." During his argument, the defense counsel indicated that he agreed with the police as to the time span it took for the events to occur and then he argued, "I'm not saying these officers lied, at least not as to that aspect of it. Maybe as to the search." In the closing argument, the state parsed the defendant's theory, mindful that the defendant was the only person at the scene of the crime, as a "credibility contest." The state also replied that the arresting officers were "honest" and "are not lying." The evidence at the trial discloses that, on more than one occasion, the defendant testified that the police were not telling the truth. Moreover, we do not agree

with the defendant's claim that the state "repeatedly" vouched for the truthfulness of the police and that the prosecutor "continually" voiced his own opinion of the evidence. The use of the adverbs "repeatedly" and "continually" are not appropriate when one considers the final arguments in the context of the entire trial. Actually, the patina of such words was also markedly diminished by the defendant's own closing argument, which was not without its own "vouching" and some opinion. At the outset of its closing argument, the state made the point to the jury that "it's your collective recollection of the facts that matters, not the opinion of myself or [the public defender]." At the very end of his closing argument, the prosecutor submitted that after the jury looked at the facts, the only conclusion that it could reach was that the state had proven its case beyond a reasonable doubt. The circumstances in which the prosecutor referred to the defendant as a "thief" and "robber" were a fair repetition of how the defendant characterized himself as he testified.

A careful review of the record discloses that the defendant's claims do not approach the level of a due process violation. The challenged remarks, to the extent that they were inappropriate, were isolated and brief and did not reflect a pattern of misconduct in the context of the entire trial. They clearly did not deprive the defendant of a fair trial. The defendant, therefore, cannot prevail on his claim of prosecutorial misconduct in the closing argument.

The judgments are affirmed.

In this opinion the other judges concurred.