## STATE OF CONNECTICUT *v.* ALLISON GREENE
### (AC 17329)

O'Connell, C. J., and Lavery and Daly, Js.

Argued December 11, 1998—officially released April 6, 1999

*Cheryl E. Heffernan,* for the appellant (defendant).

*Bruce R. Lockwood,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Cara Eschuk,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant, Allison Greene, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A)[1] and risk of injury to a child in violation of General Statutes § 53-21.[2] On appeal, the defendant claims (1) that the trial court improperly (a) determined that defense counsel had "opened the door" to evidence of the defendant's uncharged misconduct and (b) permitted the prosecutor to question a defense witness about her knowledge of the defendant's uncharged misconduct, (2) that evidence of the defendant's uncharged misconduct tainted the verdict thereby denying the defendant a fair trial and (3) that the defense counsel's negligence deprived the defendant of her constitutional right to the effective assistance of counsel. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant, who was born in 1971, baby-sat for the victims, a boy, M, and a girl, S, between October 1, 1990, and July 30, 1992. At the time, M was between six and eight years of age and S was between seven and nine years of age. The defendant generally took care of the children on Friday evenings at their home,

---

[1] General Statutes § 53a-73a provides in relevant part: "(a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[2] General Statutes § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

but on occasion the children stayed with the defendant at her parents' home.

While she cared for them, the defendant subjected both M and S to sexual contact on numerous occasions. The contact included having one of the children insert his or her finger into the defendant's vagina and moving it about at the defendant's direction. Sometimes the defendant touched M's penis. On occasion, the defendant removed her clothing, had the children do the same and attempt sex together, and then the defendant rubbed M's penis against her vagina. The defendant instructed the children not to tell anyone what they had done. In 1992, S asked the defendant to stop subjecting her to sexual contact and the defendant complied. The defendant did, however, continue to have sexual contact with M, including one incidence of placing M's penis in her mouth. In July, 1995, M told his mother about the sexual activity. When questioned by her mother, S confirmed the events. The defendant was arrested and charged shortly thereafter. Trial was held in March, 1997, at which time M and S were twelve and thirteen, respectively. Additional facts will be addressed as necessary.

## I

The defendant first claims that the trial court improperly ruled that defense counsel had "opened the door" to evidence of the defendant's uncharged misconduct and permitted the prosecutor to question a defense witness regarding her knowledge of that misconduct. We disagree.

" 'The standard for review is clear. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion

is manifest or where an injustice appears to have been done.' . . . *State* v. *Cooper*, [227 Conn. 417, 426–27, 630 A.2d 1043 (1993)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Oliver*, 48 Conn. App. 41, 51, 708 A.2d 594, cert. denied, 244 Conn. 930, 711 A.2d 729 (1998).

"Evidence of a defendant's prior misconduct is not ordinarily admissible to prove his bad character or criminal tendencies. *State* v. *Williams*, 203 Conn. 159, 185, 523 A.2d 1284 (1987); see *State* v. *Ortiz*, 40 Conn. App. 374, 378, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). Evidence of other misconduct, however, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . or an element of the crime. . . . *State* v. *O'Neill*, 200 Conn. 268, 273, 511 A.2d 321 (1986); *State* v. *Sierra*, 213 Conn. 422, 428–29, 568 A.2d 448 (1990); *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982); *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Busque*, 31 Conn. App. 120, 128, 623 A.2d 532 (1993), appeal dismissed, 229 Conn. 839, 643 A.2d 1281 (1994). Such evidence, however, to be admissible must also be relevant and material. *State* v. *Asherman*, 193 Conn. 695, 728, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Smith*, 198 Conn. 147, 157, 502 A.2d 874 (1985); *State* v. *Ibraimov*, supra, 352; *State* v. *Wiedl*, 35 Conn. App. 262, 265, 644 A.2d 1313, cert. denied, 231 Conn. 914, 648 A.2d 160 (1994).

"The trial court has broad discretion not only to rule on the relevancy of evidence; *State* v. *Jones*, 205 Conn. 638, 666–67, 534 A.2d 1199 (1987); but also to determine the scope of cross-examination. *State* v. *Cooper*, [supra, 227 Conn. 431]; *State* v. *Hernandez*, [224 Conn. 196, 208, 618 A.2d 494 (1992)]; *State* v. *Sharpe*, 195 Conn. 651, 657, 491 A.2d 345 (1985). Uncharged misconduct

evidence must satisfy a two part test in order to be admitted as an exception. The evidence must be relevant and material to at least one of the claimed exceptions, and its probative value must outweigh its prejudicial effect. *State* v. *Cooper*, [supra, 427]. *State* v. *Wiedl*, supra, 35 Conn. App. 265." (Internal quotation marks omitted.) *State* v. *Moore*, 49 Conn. App. 13, 21–22, 713 A.2d 859 (1998).

"When relevant evidence of other crimes is offered, the trial court must still consider whether its prejudicial tendency outweighs its probative value before ruling upon its admissibility. . . . *State* v. *Braman*, 191 Conn. 670, 676, 469 A.2d 760 (1983). Because of the difficulties inherent in this balancing process, we will uphold the trial court's ruling on the admission of uncharged misconduct evidence unless there is a manifest abuse of discretion or an injustice appears to have been done. Id.; *State* v. *Harris*, [43 Conn. App. 830, 837, 687 A.2d 544 (1996)]." (Internal quotation marks omitted.) *State* v. *Vega*, 48 Conn. App. 178, 191, 709 A.2d 28 (1998).

## A

The following additional facts are relevant to our analysis of the defendant's first evidentiary claim, i.e, that the trial court improperly determined that defense counsel opened the door to evidence of the defendant's uncharged misconduct. Prior to trial, the state asked the trial court to determine whether it would permit the state to place in evidence facts of the defendant's uncharged misconduct to show a course of conduct. Another incident of the defendant's uncharged misconduct pertained to S and was barred by the statute of limitations. Other of the defendant's uncharged misconduct concerned a minor, H, and is unrelated to this case. The trial court reserved judgment with respect to the uncharged misconduct pertaining to S, but ruled that the uncharged misconduct concerning H was more

prejudicial than probative and precluded the state from putting it in evidence. In opposing the defendant's claim on appeal, the state argues that during trial, defense counsel's cross-examination of S and her mother opened the door so that the state was properly permitted to introduce evidence concerning the H matter. We agree with the state.

The following exchange took place during defense counsel's cross-examination of S:

"Q. At any point [prior to your confirming the defendant's acts], did your mother come to you and ask you if Allison Greene had done something to you?

"A. Yes.

"Q. When was that?

"A. I don't remember, but it was after 1994. I know that. And I told her 'No.'

"Q. So you told her 'No'?

"A. Yes.

"Q. And today your answer would be 'Yes'?

"A. Yes.

"Q. So that wasn't true?

"A. What wasn't true?

"Q. When you told your mother that nothing had happened?

"A. Right.

"Q. When your mother asked you that question, was she angry?

"A. No.

"Q. Do you know why she asked you that question?

"A. Yes.

"Q. Why did she ask you that question?

"A. Because of what someone else was accusing Allison for."

At the conclusion of cross-examination, the prosecutor, outside the presence of the jury, argued that defense counsel had opened the door to the H matter. The state contended that defense counsel was attempting to argue bias on the part of the victims' mother and that the mother was planting ideas in S's mind. The trial court again ruled that evidence of the H matter was more prejudicial than probative and would not permit it to come into evidence. Following the ruling, the prosecutor informed the trial court that if defense counsel continued to pursue a line of questioning with S or any other witness so as to suggest that the victims' mother attempted to indoctrinate the victims, the state would ask the court to reconsider its ruling concerning the H matter. The trial court responded that it had already put defense counsel on such notice.

The next day, during defense counsel's cross-examination of the victims' mother, the following exchange occurred.

"Q. Now . . . is it not a fact that you questioned your daughter a full year and a half earlier about getting molested by my client?

"A. No.

"Q. Is it your testimony that you never asked S if she had been molested by Allison Greene? Now, think about that.

"A. Once.

"Q. Okay. When was that?

"A. That was back in December of 1994 and in January of 1995.

"Q. If you were shocked to even think that Allison Greene committed this act, why were you asking her six months earlier if she had molested your children?"

Before the victims' mother could respond, the prosecutor asked the trial court to excuse the jury, which the trial court did. Thereafter, the prosecutor argued that the mother's response would be related to the H matter and that she should be permitted to answer. After some discussion, defense counsel withdrew the question. The prosecutor pressed her argument that the victims' mother be permitted to respond to the defense question because it was important to explain why the mother had questioned her daughter. Defense counsel argued that he was merely trying to impeach the witness. The trial court asked for a transcript of the pertinent testimony, which it reviewed during the noon recess. At the beginning of the afternoon session, the trial court reversed, in part, its decision to preclude the introduction of the defendant's uncharged misconduct with respect to the H matter.[3] In response to a question from defense counsel about further inquiry of the victims' mother, the trial court again warned defense counsel of the peril of opening the door to the H matter.[4]

---

[3] The trial court ruled: "I'm prepared to rule on this issue of what's been styled the H matter, the uncharged misconduct, and, on redirect, I will permit [the victims' mother] to indicate that the predicate or the basis for the question to [S] was information she had received about the defendant's conduct from a third party. I do that because I'm of the opinion that in fairness the motivation for the question should rightly come before the jury. I'm still of the opinion that if we get into details of the H matter, it will be prejudicial to the defendant even on this record as made by her counselor."

[4] The following colloquy between the trial court and counsel followed the court's ruling:

"[Prosecutor]: Yes, Your Honor. I would like one clarification, however. Since some questions have been put to [the victim's mother] concerning bias and possible falling out or dispute with the defendant, I would ask to be permitted to ask one follow-up question, which would be notwithstanding that information, did you continue to be on good terms with Ms. Greene until July 1?

"The Court: I don't see where that's objectionable.

On redirect examination, the prosecutor elicited the following testimony from the victims' mother.

"Q. You were asked about asking S whether she had been molested by Allison Greene. You indicated that you had asked her. Is that correct?

"A. Yes, in 1994 [and] 1995.

\* \* \*

"Q. Why did you ask S that?

"A. Allison had moved in with us in December from the other nanny position and there was a problem evidently where she had worked and she moved out. There was alleged certain incidents that had happened."

On recross-examination, defense counsel inquired of the victim's mother:

"Q. When you asked your daughter in 1994 if she had been molested, what did she say?

"A. 'No,' and ran away."

The prosecutor again requested that the jury be excused and asked the trial court to permit the state to offer additional evidence concerning the H matter. After hearing the voir dire testimony of the victims' mother, the trial court permitted the following testimony on re-redirect examination by the state:

"Q. You were asked whether S earlier denied that she had been molested by Allison Greene; is that correct?

"A. Yes.

---

"[Defense Counsel]: I would only request one follow-up question in that regard. I would request to be allowed to ask whether she took any further steps or investigation or took any action as a result of that knowledge.

\* \* \*

"The Court: Well, you do that at your peril because you don't know what the witness is going to say."

"Q. Later on she told you that, in fact, she had been molested by Allison Greene; is that correct?

"A. Yes.

"Q. Did you ever ask her why she denied that earlier?

"A. Yes, I did.

"Q. What did she respond to you?

"A. She goes, Mom, I didn't tell you because I really thought she was going to jail because of the other allegations that were brought up on her. The allegation part is not S's words, though. It's mine.

"Q. Had you known the true position would you have allowed Allison back in your house that year?

"A. No, I would not have allowed her in our home.

"Q. Would you have supported her that year?

"A. If they came forward, I would have proceeded as I am doing now."[5]

The jury was again excused and defense counsel moved for a mistrial because the trial court permitted evidence of the defendant's uncharged misconduct in the H matter to be admitted. Defense counsel argued that nothing had occurred during the trial to warrant the trial court's reversing its pretrial ruling. The trial court denied the motion.

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986); see also *State* v. *Roy*, 173 Conn. 35, 50, 376 A.2d 391 (1977). The party who initiates discussion on the issue is said to have opened the door to

---

[5] In keeping with the court's pretrial ruling, no details about the nature of the H matter were admitted in evidence.

rebuttal by the opposing party. *State* v. *Graham*, supra, 13. The doctrine of opening the door cannot, of course, be subverted into a rule of injection of prejudice. *United States* v. *Lum*, [466 F. Sup. 328, 335 (D. Del. 1979)], quoting *United States* v. *Winston*, [447 F.2d 1236, 1240 (D.C. Cir. 1971)]. *State* v. *Glenn*, [194 Conn. 483, 499, 481 A.2d 741 (1984)]. The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. *California Ins. Co.* v. *Allen*, 235 F.2d 178, 180 (5th Cir. 1956). *United States* v. *Winston*, supra [1240]. Thus, in making its determination, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal. Id., 1241–42; *People* v. *Arends*, 155 Cal. App. 2d 496, 509, 318 P.2d 532 (1957)." (Internal quotation marks omitted.) *State* v. *Moore*, supra, 49 Conn. App. 20–21.

"The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. . . . [T]his rule operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context. . . . *State* v. *Paulino*, 223 Conn. 461, 467, 613 A.2d 720 (1992)." (Internal quotation marks omitted.) *State* v. *Pulley*, 46 Conn. App. 414, 422, 699 A.2d 1042 (1997).

In the present case, the state preliminarily sought permission to introduce the H matter to establish the

defendant's course of conduct. After reviewing the proposed evidence, the trial court determined that the H matter was more prejudicial to the defendant than it was probative and denied the state's motion. Thereafter, defense counsel on not just one, but three occasions, asked S and her mother questions that were related to the H matter. Following the first time that S was asked questions indirectly related to the H matter, the state asked the trial court to reconsider its ruling and to permit the prosecutor to ask S about the H matter. The trial court declined to change its initial ruling but again warned defense counsel about opening the door.

During his cross-examination of S's mother, defense counsel asked questions indirectly relating to the H matter in an attempt to impeach the witness and, as the prosecutor argued, to create an inference in the minds of the jurors that the victims' mother had actually planted the seeds of the defendant's acts of sexual misconduct in the minds of her children. The trial court requested a transcript of the defense cross-examination of the victims' mother and modified its earlier ruling to permit the prosecutor to inquire on redirect why the victims' mother had asked S if the defendant had ever molested her. The victims' mother merely responded that she was about to let the defendant live in her home and that she was aware of the defendant's having had a problem with another family. No details of the H matter were admitted.

On recross-examination, defense counsel inquired further of the victims' mother concerning her conversation with S and S's reaction to the conversation. Again the prosecutor asked the court to permit her to ask the victims' mother additional questions about her conversations with S. At that point in the trial, the jury had heard that the victims' mother had asked S whether the defendant had molested her and that S responded in the negative and ran away. The jury also knew that

the victims' mother knew of another incident involving the defendant.

The prosecutor made an offer of proof to the court to demonstrate why the victims' mother should be permitted to explain her testimony so that the jury would not be left with the impression that she had instigated her children's accusations against the defendant. The offer of proof, and subsequent testimony, demonstrated that S was aware of the defendant's prior uncharged acts of misconduct and was fearful that, if she told her mother that the defendant had molested her and M, the defendant would go to jail.

"The basic function of a redirect examination is to enable a witness to explain and clarify relevant matters in his testimony which have been weakened or obscured by . . . cross-examination. *Grievance Committee* v. *Dacey*, 154 Conn. 129, 151, 222 A.2d 339 [(1966), appeal dismissed, 386 U.S. 683, 875 Ct. 1325, 18 L. Ed. 2d 404 (1967)]. Where evidence is introduced showing an apparent admission of a party out of court, he is entitled to explain the circumstances so that the trier can properly evaluate it." (Internal quotation marks omitted.) *Kucza* v. *Stone*, 155 Conn. 194, 198, 230 A.2d 559 (1967).

Here, defense counsel, in his attempt to impeach the victims' mother, used information concerning the very evidence that he sought to keep from the jury to create in the minds of the jurors an unfair basis for the victims' testimony. The reason the victims' mother questioned S—the mother's concern about the H matter—was relevant to the jury's understanding of her testimony considering the light in which the defendant's cross-examination placed her. The defendant opened the door to the relevant explanation of the mother's questioning her daughter. The record discloses that the trial court was mindful of the prejudicial effect that the H matter could have on the defendant. Only after defense counsel three times put the uncharged misconduct in question

did the trial court, in fairness to the state, permit the evidence of the H incident to come into evidence. We note that the trial court fairly balanced the rights of the defendant and the state by refusing to permit any evidence of the nature of the H matter to come into evidence.

We, therefore, conclude that the trial court properly permitted evidence of the defendant's uncharged misconduct to come into evidence.

### B

The defendant's second evidentiary claim is that the trial court improperly permitted the prosecutor to question a defense witness regarding her knowledge of the defendant's uncharged misconduct. The defendant's claim is that Geraldine Wortman was not a character witness. We disagree.

The following facts are relevant to this claim. The defendant called Wortman to testify on her behalf. The jury reasonably could have found that Wortman's daughter had been a friend of the defendant's for twelve to thirteen years prior to trial. Wortman worked with the victims' father, who had never complained to her about the defendant's conduct as a baby-sitter. The defendant had taken care of Wortman's grandchildren and Wortman had never seen her behave in a sexually inappropriate manner. Wortman was also satisfied with the defendant's performance as a baby-sitter. On cross-examination, the prosecutor, outside the presence of the jury, asked the trial court for permission to question Wortman, as a character witness, about her knowledge of the defendant's uncharged misconduct. The defendant objected to the request claiming that Wortman's testimony was not character evidence but evidence of her actual observations of the defendant's baby-sitting capability. Following the prosecutor's voir dire, the trial

court granted the state's request to cross-examine Wortman about her knowledge of the defendant's uncharged misconduct. The witness testified that she was aware of a number of incidents involving the defendant. Wortman also testified that she never directly asked her grandchildren whether the defendant had ever behaved in a sexually inappropriate manner with them.

"Character may be proved by testimony concerning the accused's general reputation in the community as to the trait. . . . The law in this state also allows proof of character by the testimony of those who have had an opportunity to form, and have formed, an opinion as to whether the accused possessed a particular character trait." (Internal quotation marks omitted.) *State* v. *Ostolaza*, 20 Conn. App. 40, 45, 564 A.2d 324, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989). Here, Wortman was clearly called to offer her opinion as to the defendant's capability to provide baby-sitting services.[6]

"When a defendant calls a character witness to testify to a particular trait, the defendant opens the door for the state to cross-examine the witness by reference to prior acts of misconduct relevant to that trait." *State*

---

[6] On direct examination by defense counsel, the witness testified as follows:

"Q. Now, when [the victims' father] spoke about—of Allison, were the comments positive or negative?

"A. They were always very positive.

"Q. Did [the victim's father] ever complain about Allison's conduct?

"A. No. He thought she did very good with the children, that she was very helpful with having them do their homework, and that their behavior was improved, you know, quite a lot.

"Q. Now, was it your earlier testimony that Allison has done child care in your family as well?

"A. Yes.

"Q. As to your observations only, have you ever observed Allison Greene behaving in a sexually inappropriate manner?

"A. Never.

"Q. Are you satisfied with her performance as a child care worker?

"A. Yes."

v. *McGraw*, 204 Conn. 441, 446–47, 528 A.2d 821 (1987); *State* v. *Turcio*, 178 Conn. 116, 126–27, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). "The purpose of such cross-examination is not to contest the defendant's own veracity but rather to test the basis of the opinion offered by the character witness"; *State* v. *McGraw*, supra, 447; and " 'to test the credibility of the character witness by ascertaining his good faith, his source and amount of information and his accuracy.' " *State* v. *Ostolaza*, supra, 20 Conn. App. 46.

"If a defendant offers evidence of a trait of character as circumstantial evidence to prove that he acted in conformance with that trait and that it is unlikely he committed the crime charged, then the state may offer evidence to disprove the existence of the trait. *State* v. *Martin*, 170 Conn. 161, 163, 365 A.2d 104 (1976). The state may not, however, use specific acts of misconduct to disprove the trait; id.; or to prove the guilt of the defendant as to the crime charged. *State* v. *DeFreitas*, 179 Conn. 431, 461, 426 A.2d 799 (1980). Nonetheless, the state is allowed to test the basis for the witness' opinion." *State* v. *Pettersen*, 17 Conn. App. 174, 182–83, 551 A.2d 763 (1988), on appeal after remand, 20 Conn. App. 288, 566 A.2d 714 (1989), cert. denied, 213 Conn. 814, 569 A.2d 550 (1990).

On the basis of our review of the record, we conclude that the trial court properly determined that Wortman was a character witness who offered testimony as to the defendant's capability to provide appropriate child care. The state properly questioned Wortman as to her knowledge of the defendant's uncharged misconduct to challenge the basis of the witness' opinion. The state appropriately did not delve into the details of the uncharged misconduct. Therefore, the trial court properly admitted the testimony.

## II

The defendant's next claim is that evidence of the defendant's uncharged misconduct tainted the verdict and denied the defendant a fair trial. More specifically, the defendant claims that given her denial of the allegations and testimony concerning her minimal contact with the victims during the time in question and because there were inconsistencies between M's and S's testimony concerning the number of times the defendant had sexual contact with M in S's presence, the admission of her uncharged misconduct inappropriately swayed the jury. We are unpersuaded.

The defendant's claim is similar to that of the defendant in *State* v. *Reddick*, 33 Conn. App. 311, 331, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994), where the defendant claimed that the evidence was insufficient to support his conviction because it was contradictory. "Robing garden variety claims [such as insufficiency of evidence] in the majestic garb of constitutional claims does not make such claims constitutional in nature." (Internal quotation marks omitted.) Id., 331–32. "When we are called on to review a sufficiency of the evidence claim, we impose a two part analysis. We first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993); *State* v. *Hooks*, 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. *State* v. *Salz*, supra; *State* v. *Rivera*, supra.

"It is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the

facts as it finds them to exist. *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Rivera*, supra, 201. It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. *State* v. *Pinnock*, 220 Conn. 765, 778–79, 601 A.2d 521 (1992); *State* v. *Rivera*, supra." *State* v. *Reddick*, supra, 33 Conn. App. 332–33. "The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 333.

On the basis of our review of the record, we conclude that the evidence was controverted and that although the testimony of the victims' may have differed as to the number of times the defendant had sexual contact with M in S's presence, their testimony concerning the nature of the defendant's acts was consistent. Defense counsel conceded during oral argument that S's testimony was internally consistent. One of M's friends also testified that M had confided in him about one year before M told his mother that he had had sexual contact with the defendant. The jury, therefore, could have drawn the reasonable inference that the defendant was guilty beyond a reasonable doubt.

Furthermore, we note that the trial court instructed the jury that it could not use the evidence of the defendant's uncharged misconduct as evidence of the defendant's bad character or as evidence of her tendency to commit criminal acts.[7] "A jury is presumed to follow

[7] The trial court charged the jury in part: "Also, during the course of the trial there was testimony on direct and cross-examination about other misconduct of the defendant, other than what is charged in the sixth count

the trial court's instructions. *State* v. *Richardson*, 214 Conn. 752, 757, 574 A.2d 182 (1990)." *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 707, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). Our conclusion that the jury followed the trial court's instructions and carefully weighed the evidence is supported by the fact that the jury acquitted the defendant of sexual assault in the first degree.

We, therefore, conclude that the defendant received a fair trial.

### III

The defendant's final claim is that she was deprived of her right to the effective assistance of counsel as a result of defense counsel's negligence.[8] "Almost without exception, we have required that 'a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).' *State* v. *Munoz*, 233 Conn. 106, 131 n.16, 659 A.2d 683 (1995); *State* v. *Roman*, 224 Conn. 63, 65 n.2, 616 A.2d 266 (1992), cert. denied, 507 U.S. 1039, 113 S. Ct. 1868, 123 L. Ed. 2d 488 (1993)('defendant's claim of ineffective assistance of counsel must await an appro-

---

of the amended substitute information. You must remember, as I have already instructed you, you are expressly prohibited from using this evidence as evidence of the bad character of the defendant or as evidence of a tendency to commit criminal acts. Please remember that Ms. Greene is on trial only for the six charges contained in the amended substitute information document. And you must only consider each of those charges and consider them separately during your deliberations . . . and no other charges, all in accordance with my instructions."

[8] The defendant bases her claim on the sixth amendment to the United States constitution. Although noting that the constitution of Connecticut, article first, § 8, also protects her right to the effective assistance of counsel, the defendant, in her brief, concedes that her state right provides her with no greater protection than that afforded her by the United States constitution.

636

priate factual record, which can only be developed pursuant to a petition for habeas corpus'); *State* v. *Walker*, 215 Conn. 1, 9, 574 A.2d 188 (1990). Moreover, we have stated as our preference 'that *all* of the claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, be evaluated by the same trier in the same proceeding.' . . . *State* v. *Leecan*, supra, 541. On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the *trial court*, rather than by those of his counsel. See *State* v. *Webb*, 238 Conn. 389, 414 n.24, 680 A.2d 147 (1996); *State* v. *Martin*, [201 Conn. 74, 83, 513 A.2d 116 (1986)]; *State* v. *Rodriquez*, 200 Conn. 685, 694–96, 513 A.2d 71 (1986)." (Emphasis in original.) *State* v. *Crespo*, 246 Conn. 665, 687–88, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). We therefore dismiss this claim.

The judgment is affirmed.

In this opinion the other judges concurred.