[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
By her amended petition of October 21, 1999, petitioner seeks a writ of habeas corpus. She alleges that she is in the custody of respondent serving a sentence that was imposed in the Judicial District of Waterbury on May 14, 1997. In the first count of the petition, it is alleged that petitioner's confinement is illegal since her conviction was obtained in violation of her rights under the constitution of the United States and the State of Connecticut in that she was denied her right to effective assistance of counsel. In the second count, it is alleged that petitioner's confinement is illegal since her conviction was obtained in violation of due process of law as guaranteed by federal and state constitutions in that she did not receive a fair trial before an impartial jury, in part, because of the admission of irrelevant and highly prejudicial evidence.
For reasons hereinafter stated, the petition is dismissed.
Petitioner has restricted the evidence presented and her brief to the first count of the petition, the claim of ineffective assistance of counsel. Except as they may be involved in the ineffective assistance of counsel claim, the allegations of the second count will therefore not be considered.
The evidence indicates that, after a jury trial, petitioner was convicted of four counts of risk of injury to a child in violation of Connecticut General Statutes § 53-21 and one count of sexual assault in the fourth degree in violation of Connecticut General Statutes §53a-73a[1]. As a result of such conviction, a total effective sentence often years execution suspended after five years with five years probation was imposed. As alleged, petitioner is now serving that sentence in the custody of respondent.
The first count of the petition is based upon a claim of ineffective assistance of counsel. Attorney Scott D. Chamberlain represented petitioner at all stages of the criminal proceeding, including the trial. It is claimed that Attorney Chamberlain's representation was constitutionally defective.
As a defendant in a criminal prosecution, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings." . . . This right arises under the sixth and fourteenth amendments to the United States constitution" Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995). (Citations omitted.)
The general standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 CT Page 13294 L.Ed. 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
 I.
Attorney Scott Chamberlain represented petitioner throughout the criminal proceedings, which resulted in her conviction on May 14, 1997. It is petitioner's claim that Attorney Chamberlain's representation was so ineffective as to violate her right to counsel under the provisions of the Sixth and Fourteenth Amendments to the United States Constitution and § 8 of the Connecticut Constitution.
The first count of the petition limited the allegations to the claim that during the criminal trial, Attorney Chamberlain "opened the door" to highly prejudicial evidence of uncharged misconduct. In her brief, petitioner raised the additional claim that Attorney Chamberlain failed to object to certain hearsay testimony offered by the state under the theory of constancy of accusation. It is claimed that this testimony should have been excluded under the law as stated in State v. Troupe, 237 Conn. 284
(1996). Petitioner's expert witness, Norman Pattis, testified on this subject and respondent has briefed the issue. It will therefore be considered by the court.
Petitioner was charged with criminal sexual activity involving two young children. She denied the truth of these claims and it was decided CT Page 13295 that the matter would go to a trial by jury. Petitioner's defense was unsuccessful. She was convicted of all charges except the charge of sexual assault in the first degree. In upholding the conviction, the Appellate Court determined that the jury could reasonably have found the following facts.
"The defendant who was born in 1971, baby-sat for the victims, a boy, M, and a girl, S, between October 1, 1990 and July 30, 1992. At the time, M was between six and eight years of age and S was between seven and nine years of age. The defendant generally took care of the children on Friday evenings at their home, but on occasion the children stayed with the defendant at her parents' home.
While she cared for them, the defendant subjected both M and S to sexual contact on numerous occasions. The contact included having one of the children insert his or her finger into the defendant's vagina and moving it about at the defendant's direction. Sometimes the defendant touched M's penis. On occasion, the defendant removed her clothing, had the children do the same and attempt sex together, and then the defendant rubbed M's penis against her vagina. The defendant instructed the children not to tell anyone what they had done. In 1992, S asked the defendant to stop subjecting her to sexual contact and the defendant complied. The defendant did, however, continue to have sexual contact with M, including one incidence of placing M's penis in her mouth. In July, 1995, M told his mother about the sexual activity. When questioned by her mother, S confirmed the events. The defendant was arrested and charged shortly thereafter. Trial was held in March, 1997, at which time M and S were twelve and thirteen respectively." State v. Green52 Conn. App. 617, 618-619 (1999).
The petitioner denied that she committed the offenses charged and remained consistent in this denial throughout the proceedings. Under such circumstances, the only avenue open to the defense was to submit the issues to a jury. At the habeas trial, petitioner called an expert witness who testified that the defense of sexual assault and related charges such as petitioner was accused of was a most difficult undertaking. The expert testified that the defense of such charges should involve an attempt to create doubt in the minds of the jurors by limiting the evidence and by stressing the inconsistencies in the testimony of the children who were the only state's witnesses capable of testifying as eyewitnesses to the crime.
Attorney Chamberlain selected a trial strategy based upon two theories of defense. The first theory was based upon a claim of fabrication and false memory. The allegations of criminal conduct on the part of the petitioner originated from a situation in which the children's mother CT Page 13296 caught the male child, M, masturbating. Upon perceiving his mother's displeasure at this act, M stated that the petitioner had made him do it. M then informed his mother of his sister's involvement. The sister, S, confirmed M's statement of sexual activity perpetuated by the petitioner. The mother then proceeded to call in the police and prosecuting authorities resulting in petitioner's arrest and prosecution.
The defense strategy involved placing before the jury a scenario consistent with petitioner's denial of culpability. Under this defense theory, M, on being caught by his mother, made up a story involving the petitioner and he was supported in this falsehood by his sister, his only sibling. The children's mother, ready to believe this charge, overacted and by her actions installed in the children a false memory of the events. Important to this theory was the fact that on a previous occasion, the mother had asked S if the petitioner had sexually abused her. At that time, S denied any sexual abuse by petitioner. Attorney Chamberlain felt that it was vital to the defense that this accusation and denial be placed before the jury. The accusation would show the mother's frame of mind and the denial would be in direct contradiction of S's testimony at trial.
The problem facing defense counsel in bringing out this information was that the mother's prior accusation was based upon her knowledge that the petitioner had been arrested for the sexual abuse of another child, H.[2]
Prior to the start of trial, the prosecutor asked the court to rule on whether it would permit the state to place in evidence petitioner's abuse of H as uncharged misconduct to show a continuing course of conduct. The court ruled that such testimony with respect to misconduct with H was more prejudicial than probative and precluded the state from introducing it. State v. Green, supra, 52 Conn. App. 621-622.[3]
Attorney Chamberlain was then faced with the Hobson's choice of not eliciting the vital testimony concerning the prior accusations and denial or bring in such testimony and run the risk of testimony concerning the H matter coming before the jury. At trial, during the cross examination of S, Attorney Chamberlain asked about the prior accusation by her mother and S's denial which contradicted her in-court testimony. The attorney then asked "do you know why she asked you that question?" S replied "yes" and Attorney Chamberlain asked, "Why did she ask you that question?" S answered, "Because of what someone else was accusing Allison for."
At the conclusion of cross examination, the prosecutor, outside the presence of the jury, argued to the court that Attorney Chamberlain had opened the door to the H matter. The judge again ruled that the H matter was more prejudicial than probative and would not permit it to come into evidence. The prosecutor informed the court that if defense counsel CT Page 13297 continued to pursue this line of questioning with S or any other witness so as to suggest that the victims' mother had attempted to indoctrinate the children, the state would ask the court to reconsider its ruling concerning the H matter. The court indicated that it had already put defense counsel on notice with regard to the H matter. Id., 623.
The next day, the state called the mother of the victims. During cross examination, defense counsel asked the mother if it was not a fact that she questioned S a year and a half earlier about being molested by the petitioner. At first, the mother denied the accusation. The following exchange then took place with Attorney Chamberlain asking:
 "Q. Is it your testimony that you never asked S if she had been molested by Allison Greene? Now, think about that.
"A. Once.
"Q. Okay. When was that?
"A. That was back in December of 1994 and in January of 1995.
 "Q. If you were shocked to even think that Allison Greene committed this act, why were you asking her six months earlier if she molested your children?"
Before the witness could answer the question, the jury was excused from the court at the request of the prosecutor. The prosecutor then argued that the mother's response would be related to the H matter and that she should be permitted to answer the question. After some discussion, Attorney Chamberlain withdrew the question. The prosecutor, however, pressed her argument that the mother should be allowed to answer. Id., 623, 624.
After reviewing the transcript, the trial court stated:
 "I'm prepared to rule on this issue of what's been styled the H matter, the uncharged misconduct, and, on redirect, I will permit [the victims' mother] to indicate that the predicate or basis for the question to [S] was information she had received about the defendant's conduct from a third party. I do that because I'm of the opinion that in fairness the motivation for the question should rightly come before the jury. I'm still of the opinion that if we get into the details of the H matter, it will be prejudicial to the defendant even on this record as made by her CT Page 13298 counselor." Id., 624 n. 3.
In response to the judge's ruling on redirect examination, the prosecutor elicited the following testimony from the victims' mother.
 "Q. You were asked about asking S whether she had been molested by Allison Greene. You indicated that you asked her. Is that correct?
"A. Yes, in 1994 [and] 1995.
***
"Q. Why did you ask S that?
 "A. Allison had moved in with us in December from the other nanny position and there was a problem evidently where she had worked and she moved out. There was alleged certain incidents that had happened." On cross examination, defense counsel inquired of the victim's mother:
 "Q. When you asked your daughter in 1994 if she had been molested, what did she say?
"A. `No,' and ran away."
The prosecutor again requested that the jury be excused and asked the trial court to permit the state to offer additional evidence concerning the H matter. The trial court then permitted the following testimony on re-redirect examination by the state.
 "Q. You were asked whether S earlier denied that she had been molested-by Allison Greene; is that correct?
"A. Yes.
 "Q. Later on she told you that, in fact, she had been molested by Allison Greene; is that correct?
"A. Yes.
"Q. Did you ever ask her why she denied that earlier?
"A. Yes, I did.
"Q. What did she respond to you? CT Page 13299
 "A. She goes Mom, I didn't tell you because I really thought she was going to jail because of the other allegations that were brought up on her. The allegation part is not S's words, though. It's mine. Id., 626, 626.
After this evidence had been admitted, Attorney Chamberlain moved for a mistrial which was denied by the court. This decision was upheld on appeal. Id., 627-63 0.
It is plaintiff's claim that Attorney Chamberlain's performance opening the door to this "other crime" testimony was so deficient as to deprive petitioner of her constitutional right to the effect of assistance of counsel. The dilemma facing defense counsel with respect to the H matter has been referred to. The children were the only eye witnesses to the crime. S was much the better witness. This was agreed to by petitioner's expert. It was not unreasonable for defense counsel to attempt to impeach S's testimony by evidence of a prior denial which directly contradicted her testimony at trial. This evidence was also consistent with the defense theory that the sexual misconduct arose out of the mother's imagination and that she had planted the idea in S's mind. Id., 623.
"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objected standard of reasonableness. The proper measure on attorney performance remains simply reasonableness under prevailing professional norms. It is all too tempting for a defendant to second guess counsel's assistance after a conviction or adverse sentence. It is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was reasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting defects of hindsight to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Johnson v. Commissioner, 218 Conn. 408, 425
(1991). Here, it must be concluded that counsel's questioning of S and her mother were shaped by reasonable professional judgment. Without the distorting effects of hindsight, the questioning could easily be considered sound trial strategy. Although such questions allowed limited other crimes evidence it cannot be found that Attorney Chamberlain was deficient in pursuing a reasonable trial strategy which resulted in such evidence coming before the jury.
Immediately after, the state's attorneys redirect examination of the victims' mother which allowed the other crimes evidence to come before the jury, Attorney Chamberlain moved for a mistrial. In so doing, he properly preserved for appeal the judge's ruling on this difficult issue. CT Page 13300
 II.
During the presentation of the defense, Attorney Chamberlain felt that it was important to call a witness who would support petitioner and who was not a member of her family. With this in mind, Attorney Chamberlain called Geraldine Wortman to testify on behalf of petitioner. Mrs. Wortman worked with the victims' father. She testified that the father never complained about petitioner's conduct and that he spoke well of her. The witness' family used petitioner as a baby sitter and she testified favorably concerning petitioner's capabilities to provide baby sitting services. Her testimony included the following:
 "Q. As to your observations only, have you ever observed Allison Greene behaving in a sexually inappropriate manner?
"A. Never.
"Q. Are you satisfied with her performance as a child care worker?
"A. Yes."
Although defense counsel argued to the contrary, the court ruled that Wortman had testified as a character witness. The court also ruled that when a defendant calls a character witness to testify to a particular trait, the defendant opens the door for the state to cross-examine the witness by reference to prior acts of misconduct relevant to that trait. Id., 631. This ruling upheld on appeal, Id., 632.
After further discussion, and rulings by the court, the state was allowed to ask:
 "Q. Mrs. Wortman, were you aware of an incident in which Ms. Greene was discharged from a family in Southbury in approximately December of 1984 in relation to allegations of impropriety towards a small child?
A. Yes, I was.
Mrs. Wortman was then asked if petitioner had ever talked to her grandchildren about whether petitioner had acted inappropriately towards them. The witness stated that she had not discussed this with her grandchildren, but expressed confidence that the grandchildren felt free to talk about such things and that they would have come to her with such information without being asked.
The sum and substance of Mrs. Wortman's testimony, which was held by CT Page 13301 the court to be evidence of petitioner's character, was generally favorable to petitioner despite the fact that Mrs. Wortman knew of the accusation against her. The so-called evidence of uncharged misconduct was extremely limited. Such evidence involved petitioner being discharged from her employment "in relation to allegations of impropriety towards a small child." There was no testimony that petitioner had actually committed any illegal act. At this time, because of the testimony of S. and her mother, the jury was already aware of the allegations arising out of the H matter.
Aside from the issue of deficient performance by Attorney Chamberlain to prevail on a claim of ineffective assistance of counsel, petitioner must establish that she suffered actual prejudice.Bunkley v.Commisioner, supra, 222 Conn. 445. A review of the Wortman testimony fails to establish any such prejudice which might have affected the outcome of the case.
 III.
Petitioner claims that Attorney Chamberlain was constitutionally deficient in representing her in that he failed to object to prejudicial hearsay testimony which should have been excluded under State v. Troupe,
supra, 237 Conn. 284. Petitioner's expert witness supported her in this claim. As a limited exception to the rule against hearsay in sex-related crimes, a witness has been allowed to testify as to the declarations of a victim complaining about the incident. State v. Ouelette, 190 Conn. 84,92 (1983). This evidence was allowed to confirm the victim's testimony by showing a constancy of accusation, on the theory that it would be natural to make a complaint if a person had been so attacked, and unnatural if the crime had not been committed. State v. Kinney, 44 Conn. 153, 155
(1876). The-witness was allowed to testify not only that the victim stated the assault had occurred, but also concerning the details of the assault. Id., 156. In State v. Troupe, supra, 284, our Supreme Court restricted the doctrine so that "a constancy of accusation witness could testify only to the fact and the timing of the victim's complaint. Even so limited, the evidence would be admissible solely for corroboration of the victim's testimony and not for substantive purposes State v. Orhan,52 Conn. App. 231, 239 (1999). Under Troupe, the details of the assault which the victim could testify to were strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. State v. Troupe, supra, 304.
It is petitioner's claim that Attorney Chamberlain acted during the trial as if he were unaware of the changes in the law resulting fromTroupe. Specifically, petitioner claims that during the testimony of a CT Page 13302 child and neighbor, Tim Gillotti and the mother, damaging testimony, which should have been excluded under Troupe came before the jury without objection by defense counsel.
Attorney Chamberlain testified that during the trial he was aware of the Troupe decision. As a second element of the trial strategy, Attorney Chamberlain attempted to place before the jury inconsistencies in the testimony of the children, the state's only eyewitnesses. Petitioner's expert testified that it was an appropriate trial strategy in sexual assault cases to demonstrate inconsistencies in the witness' testimony and thereby impeach their credibility.
It was Attorney Chamberlain's testimony that he allowed testified which might have been precluded under Troupe to come before the jury so that he could demonstrate inconsistencies in the children's testimony concerning the details of the charges. For example, in the cross examination of Gillotti, Attorney Chamberlain was able to show that M in his disclosure to the witness did not mention sexual activity with S or oral sex with petitioner. In this connection, it must be remembered that petitioner was acquitted of the most serious charge against her, sexual assault in the first degree, involving fellatio with M.
The testimony of the mother, which caused some concern on the part of the judge, was not inconsistent with the theory of defense previously mentioned.
Upon review of the record, it must be found that Attorney Chamberlain's trial strategy with respect to evidence which may have been excluded under Troupe fell within the wide range of professional assistance that, under the circumstances, could be considered sound trial strategy.
 IV.
Upon review of the reported decision of plaintiff's appeal, State v.Greene, supra, 52 Conn. App. 617, and the transcript of the trial, it must be concluded that evidence of uncharged misconduct was admitted after counsel opened the door to allow it and some testimony which could have been excluded under Troupe came before the jury. This evidence, however, was very limited.
The evidence of uncharged misconduct, which Attorney Chamberlain is charged with allowing in, did not disclose that petitioner committed a crime. It was limited to the fact that she had been accused of impropriety and had lost her job as a result of it.
The hearsay, which could have been objected to under Troupe, was also CT Page 13303 limited. This evidence was not comparable to cases under the former law in which the child testified before the jury concerning the basic elements of the assault and a witness provided all of the gory details. The excludable evidence here allowed defense counsel to show inconsistency in the victim's testimony and such evidence was not totally inconsistent with the defense of the case.
Aside from the issue of competency of defense counsel, the general standard applied in habeas corpus proceedings requires that petitioner show actual prejudice. Before petitioner can establish a case of ineffective assistance of counsel, it must be shown that her constitutional rights to a fair trial had been prejudiced. Petitioner must establish that there is a reasonable probability that but for the admission of the excludable evidence, the result of the proceeding would have been different. This does not appear to be the case here. Although it would be improper to speculate as to what importance the jury placed on the evidence before it, it does not appear that the evidence in question comprised a significant part of the trial. For example, the state's attorney in final argument hardly mentioned such evidence. The judge also properly instructed the jury as to how the evidence could be considered.
Petitioner's expert reasoned that the uncharged misconduct evidence could lead a jury to follow the maxim that where there is smoke, there is fire probably. Such a jury could disregard the court's instructions and conclude that petitioner was an evil person and therefore convict her. It is doubtful that this occurred since she was acquitted of the most serious charge.
Aside from the issue of competency of counsel, it cannot be found that the excludable evidence which came before the jury contributed so significantly to her conviction as to have deprived her of a fair trial.Mercer v. Commission of Correction, supra, 51 Conn. App. 641.
Accordingly, the petition was a writ of habeas corpus is dismissed.
Joseph J. Purtill Judge Trial Referee